HEARD NOVEMBER TERM, 1877.

## WARREN, WALLACE & CO. *vs.* JONES.

An execution issued and lodged with the Sheriff prior to the adoption of the Code does not lose its lien upon personal property because of the provisions of the Code in reference to executions.

The Sections of the Code relating to executions apply only to executions issued after its adoption.

Statutes are never to be construed as intended to act retrospectively, if such construction can possibly be avoided, and never when such construction would make them interfere with vested rights.

BEFORE NORTHROP, J., AT ABBEVILLE, SEPTEMBER, 1877.

This was an action by Warren, Wallace & Co. against Joshua Y. Jones, as Sheriff of Abbeville County.

The case is fully stated in the opinion of the Court.

*Gary,* for appellant:

"When *levied* on personal property they [executions] shall be a lien on such property for the period of four months from the period of such levy." * * * "And *whenever* renewed shall be subject to the rules herein provided."—Acts 1874–75, p. 872, § 15.

"All statutory provisions inconsistent with the Code of Procedure are repealed."—§ 471, Code.

"Writs of execution for the enforcement of judgments, as now used, are modified in conformity to this title." * * —§ 306, Code.

"The remedy heretofore given by *scire facias* to obtain execution of a judgment is superseded by the provisions of the Code which give an action therefor."—*Cameron* vs. *Young,* 6 How., 372; *Alden* vs. *Clark,* 11 How., 209.

"Sections 283 and 284 [306 and 307 of our Code] of the amended Code of Procedure are applicable as well to judgments rendered before the Code took effect as to judgments rendered in actions brought under the Code."—*The Catskill Bank* vs. *Sandford,* 4 How., 100, 101.

Under the law as it stood before the Code went into effect an execution bound the personal property of the judgment debtor but from the time such writ was delivered to the Sheriff or other officer.—7 Stat., 229.

"The distinction between the obligation of a contract and the remedy given by the Legislature for to enforce that obligation has been taken at the bar and exists in the nature of things. Without impairing the obligation of the contract the remedy may certainly be modified as the wisdom of the nation shall direct."—*Sturges* vs. *Crowninshield,* 4 Wheat.

"For undoubtedly a State may regulate at pleasure the modes of proceeding in its Courts in relation to past contracts as well as future. * * Regulations of this description have always been considered in every civilized community as properly belonging to the remedy, to be exercised or not by every sovereignty, according to its own views of policy and humanity. It must reside in every State to enable it to secure its citizens from unjust and harassing litigation and to protect them in those pursuits which are necessary to the existence and well-being of every community; and although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract."—*Bronson* vs. *Kensie,* 1 How., 311.

"A law which regulates the issuing of executions previously rendered affects the remedy merely and does not impair the obligation of the contract."—McLean, 35.

"It is clear that this Court has no right to pronounce an Act of the State Legislature void as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The Constitution of the United States does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws."—*Watson* vs. *Mercer*, 8 Pet., 88.

"The vested right must be in the nature of a contract in order to be brought within the protection thus afforded. The lien of a judgment is a mere right of preference as among purchasers and creditors. It is to be regarded as an incident of the remedy not in the contemplation of the contracting parties."—*In re Kennedy*, 2 S. C., 226.

"The judgment is not in itself a contract," (*Biddeson* vs. *Whytel*, 3 Burr., 1545,) "and it cannot originate rights of the class protected under the United States Constitution."—*In re Kennedy*, 2 S. C., 226.

"The constitutional provision in relation to laws impairing the obligation of contracts was designed to operate only on some of the undertakings contained in the contract and was not intended to interfere with the internal regulations which a State may think proper to adopt for the government of its citizens."—*Barlow* vs. *Gregory*, 31 Conn., 264.

"The distinction between the obligation of a contract and the *remedy* for its enforcement is well established by the authorities; and while the Legislature has no right to impair the obligation of the contract, it has the undoubted right to change, modify or vary the nature and extent of the remedy, provided a substantial remedy is left the creditor. Under the United States Constitution the former power is denied to the several States, but the latter exists in full force."—*Hoffman* vs. *Quincy*, 4 Wall., 553; *State* vs. *County Treasurer*, 4 S. C., 520.

*Noble & Noble*, contra:

The execution binds personal property from the time the *fi. fa.* is delivered to the Sheriff, who shall endorse on it the day and year he received it.—2 Stat., 528, § 16, A. D. 1712, (1672); 7 Stat. at Large, 229, § 37. Execution from a Court of general

jurisdiction binds the goods of defendant from the day on which it was lodged in the Sheriff's office.—*Robinson* vs. *Cooper*, 1 Hill, 287.

The judgment of *Hodges, trustee*, vs. *John G. Boozer* was docketed 10th January, 1867, and execution lodged in the Sheriff's office the same day.

The record of the case was burnt November, 1872, and was renewed and revived 3d July, 1875, and the judgment docketed, and the execution lodged in the Sheriff's office the *same day.*—See Acts of Assembly, 1872–3, p. 452, §§ 2 and 15.

Alterations in the law in regard to liens do not apply to judgments and executions prior to 1st March, 1870.—Rev. Stat., 644.

Code, § 316: "The lodgment of executions *hereafter issued* with the Sheriff shall not bind the personal property of the debtor," etc. It would have been unconstitutional to have violated the obligation of existing liens. *Hodges* vs. *Boozer* bound all the personal property of defendant from the day the *fi. fa.* was lodged with the Sheriff, on the 10th January, 1867, and renewed 3d July, 1875, and was at all times superior to appellant's agricultural lien, except as to the crop of 1876. The lien of the *fi. fa.* never ceased to bind defendant's goods at the time in his possession, or at any time afterwards in his possession, excepting only crops under agricultural liens.

The appellant should have taken the crops, cotton, corn, etc. His lien was due 1st November, 1876.

The charge of the Circuit Judge, therefore, was right, and the verdict of the jury was right, and must stand.

March 9, 1878. The opinion of the Court was delivered by

McIVER, A. J. This was an action brought by the plaintiffs to recover the net proceeds of the sale of two mules, two steers and two wagons, sold as the property of one J. G. Boozer by the defendant, as Sheriff, under an execution in favor of one G. W. Hodges, as trustee, against said Boozer. The plaintiffs claim that these articles were covered by a mortgage given to them by said Boozer, duly recorded and dated the 25th of March, 1876, given to secure a debt which became payable on the 1st of November, 1876, while the defendant insisted that they were first liable to the lien of the above mentioned execution. This execution was originally issued on a judgment recovered by G. W. Hodges, as trustee,

against J. G. Boozer, in which Mrs. C. M. Wilson had an interest, and which was entered in the proper office on the 10th of January, 1867, on which day the original execution was lodged in the Sheriff's office. The record of this judgment having been destroyed by fire, "it was renewed and revived on the 3d of July, 1875, to the extent of Mrs. C. M. Wilson's interest" therein, and a new execution was issued thereon and lodged in the Sheriff's office that day, under which the property above mentioned was levied upon by the defendant on the 6th of January, 1877, and by him sold on the following sale day.

The Circuit Judge charged the jury that the execution creditor was entitled to the proceeds of the sale by reason of the priority of the lien of the execution to that of the mortgage. To this charge the plaintiffs excepted, and, the facts being all conceded, the only question is one of law—whether the execution creditor or the mortgagees were entitled to the proceeds of the sale. On the part of the plaintiffs it was argued that by the Code of Procedure, which it was claimed applied to all executions *issued* after its adoption, an execution had no lien on personal property until it was levied, and that as this execution was not levied until after the execution of the mortgage to the plaintiffs the mortgage had the superior lien. Passing by the question suggested by Inglis, J., in *McKnight* vs. *Gordon*, (13 Rich. Eq., 247,) whether there is not under our law such a legal estate still remaining in the mortgagor of a chattel, as well after as before condition broken, as may be the subject of levy and sale under an execution against him, and, consequently, whether the proceeds of sale in this case represented anything more than such legal estate, or equity of redemption as it may be called, to which the execution creditor would be entitled, leaving the mortgagees to their remedy against the specific property in the hands of the purchaser, we prefer to rest our decision upon other grounds.

There can be no doubt but that, prior to the Code, executions were liens upon personal property from the date of their lodgment in the Sheriff's office, even after they had lost their active energy.— *Snipes* vs. *Sheriff of Charleston*, 1 Bay, 295; *Brown* vs. *Gilliland*, 2 DeS., 539; *Greenwood* vs. *Naybor*, 1 McC., 414. Indeed, Nott, J., in *State* vs. *Laval*, (4 McC., 342,) in speaking of this doctrine, says: "It is peculiar to this State, but it is too well established now by a series of decisions to be controverted." And Harper, J., in

*Mitchel* vs. *Anderson,* (1 Hill, 73,) in reference to these decisions, uses this language : " The doctrine established by them has been too long and too firmly settled to be shaken now."

Has, then, the Code made any alterations in this respect in regard to executions issued upon judgments recorded prior to its adoption ? Section 316 of the Code, as originally adopted, reads as follows : " The lodgment of executions hereafter issued with the Sheriff shall not bind the personal property of the debtor, but personal property of the debtor shall only be bound by actual attachment or levy thereon." This Section was, however, stricken out by the 15th Section of the Act of 25th of November, 1873, (15 Stat., 499,) and another inserted, which provides, among other things, that "Executions * * * *when levied* on personal property shall be a lien on such property for the period of four months from the date of such levy, * * * and *whenever renewed* shall be subject to the rules herein provided." The question is, do these statutory provisions operate to deprive an execution issued after the adoption of the Code, upon a judgment recovered before, of the lien which it would have had under the previous provisions of the law upon this subject ? To give these provisions of the Code such a construction would be not only to give them a retrospective operation but would have the effect of divesting vested rights; for, as it has been shown, Hodges unquestionnbly had, under the law as it stood prior to the Code, a lien which is a vested right upon all the personal property of Boozer.

Now, we are admonished in the case of *Ex parte Graham* (13 Rich., 277,) that Courts, in construing statutes, should be very careful, if possible, to give them such a construction as will avoid such a result. The following language from Smith's Commentaries on Statute and Constitutional Law is there quoted with approval: " It is a general rule that statutes are not to be construed retrospectively, or so as to have a retrospective effect, unless it shall clearly appear that it was so intended by the Legislature, and not even then, if, by such construction, the act would divest vested rights." And Cooley, in his work on Constitutional Limitations, says at page 370: " It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." Looking at the provisions of the Code in the light of these principles, it is very clear that they can and must be construed so as to

avoid giving them the retrospective operation claimed for them in this case. Even if Section 316 had remained as it was originally written, we would be bound to construe it as relating only to executions issued on judgments obtained after the Code; but as the original Section has been expressly repealed, there is certainly nothing in the Section substituted for it which requires or even warrants us in applying its provisions, so far as the question of lien is concerned, to executions issued to enforce judgments obtained prior to the Code. For it would be by implication only that its provisions could be extended to such executions; and certainly no one will contend, in the face of the above cited authorities, that a statute should be given a retrospective operation merely by implication, especially when the effect would be to divest rights already vested. Indeed we might, if necessary, go further and say that even if the Code had, in the most express terms, declared that the lien which had been acquired by the lodgment of an execution, obtained prior to the adoption of the Code, should be divested, such an Act would be beyond the competency of the Legislature. For, while it may be true, as a general proposition, that a law which regulates the issuing and effect of an execution relates to the remedy merely, and that whatever belongs to the remedy merely may be altered according to the will of the Legislature, yet this, like most general propositions, is subject to the qualification that such alteration must not impair the obligation of the contract.—*State* vs. *Carew*, 13 Rich., 498, and the cases therein cited and commented on. To use the language of the Supreme Court of the United States in *Gunn* vs. *Barry*, (15 Wall., 610,) adopted by this Court in *Cochran* vs. *Darey*, (5 S. C., 127,) "the legal remedies for the enforcement of a contract which belong to it at the time and place where it is made are a part of its obligation. A State may change them, *provided the change involves no impairment of a substantial right*. If the provisions of the Constitution or the legislative Act of the State fall within the category last mentioned, they are, to that extent, utterly void." Certainly, then, if the Legislature of this State had undertaken, by the Code of Procedure (which, however, we do not think it did,) to deprive the execution creditor in this case, of the lien which he had acquired by the lodgment of his execution on the 10th January, 1867, it would have involved the "impairment of a substantial right," and, consequently, would have been "utterly void."

Again, it may well be doubted whether the execution under which the sale was made in this case can be regarded as the renewal of an execution in the proper sense of those terms, as used in the Act amending the Code, hereinbefore cited, or whether it should not rather be regarded as a mere substitute for the original execution, issued under the provisions of the "Act to remedy and supply the loss of public records and to perpetuate testimony in regard to deeds, mortgages, settlements and other papers lost by fire at Abbeville," approved 27th February, 1873, (15 Stat., 452,) which by its express terms gave to the papers so substituted the same efficacy which the original records had. The mere accidental burning of the books and papers which evidenced this judgment and the execution issued to enforce it, certainly could not have the effect of destroying any of the incidents or attributes of such judgment and execution, and the papers substituted stand in the place of the originals, furnishing all the evidence, conferring all the authority and securing all the rights which the originals would have done.

We are, therefore, unable to perceive any error in the charge of the Circuit Judge, and the motion must be dismissed.

*Willard*, C. J., and *Haskell*, A. J., concurred.